UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

CENTER CITY MUSIC, STYGIAN SONGS,
DOORS MUSIC CO., W CHAPPELL MUSIC
CORP. d/b/a WC MUSIC CORP., ALMOND
LEGG MUSIC CORP., GONE GATOR
MUSIC, and MIKE CHAPMAN PUBLISHING
ENTERPRISES,

                    Plaintiffs,

-against-

WHITE MOUNTAINS BROADCASTING,
LLC, ALEXXON, LLC, PROFILE
BROADCASTING, LLC, RADIO NEW
ENGLAND BROADCASTING, LLC,
RADIOTRON, LLC, and BRIAN
LUNDERVILLE,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

Civil Action No.:

**COMPLAINT FOR COPYRIGHT
INFRINGEMENT (17 U.S.C. § 101, et seq.)**

Plaintiffs, Center City Music, Stygian Songs, Doors Music Co., W Chappell Music Corp. d/b/a WC Music Corp., Almond Legg Music Corp., Gone Gator Music, and Mike Chapman Publishing Enterprises (collectively, "Plaintiffs") by their undersigned attorneys, allege as follows:

**NATURE OF THE ACTION**

1.     This action alleges seven (7) counts of willful copyright infringement arising out of the unauthorized public performance of Plaintiffs' copyrighted musical compositions via radio broadcast on commercial radio stations owned and operated by the Defendants.  SCHEDULE A, annexed to the Complaint, sets forth in summary form the allegations hereinafter made regarding Defendants' acts of infringement.

2.      Defendants' operate several radio stations using "music" formats.  Notwithstanding that such stations broadcast music on a nearly continuous basis, Defendants have been operating without a license from Plaintiffs' performing rights organization, the American Society of Composers, Authors and Publishers ("ASCAP"), since May 31, 2024, when ASCAP duly terminated Defendants' then-existing license for default in payment of license fees.  As a result, for more than two years, Defendants have not had permission from ASCAP to broadcast performances of its members' copyrighted music.  Nor have Defendants ever obtained permission to broadcast such performances directly from ASCAP's music publisher members, who own the copyrights in the music licensed by ASCAP.

3.      Federal copyright law is clear: radio station owners must obtain permission from copyright owners *before* broadcasting performances of their music over the airwaves.  Defendants had every opportunity to obtain an ASCAP license that would have granted them the requisite permission and that would have ensured the payment of fair compensation to the music creators, including Plaintiffs, whose music is the very lifeblood of the commercial radio industry.  Instead, by willfully infringing upon the rights of Plaintiffs and other ASCAP members, Defendants are causing direct harm to Plaintiffs and countless other music-creator members of ASCAP whose music is being broadcast over Defendants' radio stations.  Defendants' egregious misconduct must not be condoned.

**THE PARTIES**

4.      The Plaintiffs named in Column 2 of Schedule are music publishers, own valid copyrights in the works listed in corresponding Column 3, and are properly joined in this complaint under Rule 20 of the Federal Rules of Civil Procedure.

5.      Defendant White Mountains Broadcasting, LLC ("White Mountains") is a limited liability company organized under the laws of New Hampshire with a principal office located at 81 Cottage Street, Littleton, NH 03561.

6.      White Mountains is the FCC licensee of commercial radio stations WOXX-FM, located in Colebrook, New Hampshire and WKDR-AM, located in Berlin, New Hampshire.

7.      Defendant Alexxon, LLC ("Alexxon") is a limited liability company organized under the laws of New Hampshire with a principal office located at 81 Cottage Street, Littleton, NH 03561.

8.      Alexxon is the FCC licensee of commercial radio station WOTX-FM, located in Lunenberg, Vermont.

9.      Defendant Profile Broadcasting, LLC ("Profile") is a limited liability company organized under the laws of New Hampshire with a principal office located at 81 Cottage Street, Littleton, NH 03561.

10.      Profile is the FCC licensee of commercial radio station WLTN-AM, located in Littleton, New Hampshire.

11.      Defendant Radio New England Broadcasting, LLC ("RNEB") is a limited liability company organized under the laws of New Hampshire with a principal office located at 81 Cottage Street, Littleton, NH 03561.

12.    RNEB is the FCC licensee of commercial radio station WXXS-FM, located in Lancaster, New Hampshire.

13.    Defendant Radiotron, LLC ("Radiotron") is a limited liability company organized under the laws of New Hampshire with a principal office located at 81 Cottage Street, Littleton, NH 03561.

14.    Radiotron is the FCC licensee of commercial radio station WMOU-AM, located in Berlin, New Hampshire.

15.    Collectively, WOXX-FM, WKDR-AM, WOTX-FM, WLTN-AM, WXXS-FM, and WMOU-AM are referred to hereinafter as "Defendants Radio Stations".

16.    Defendant Brian Lunderville ("Lunderville" and, together with White Mountains, Alexxon, Profile, RNEB, and Radiotron, the "Defendants") is an individual who resides and/or does business in the New Hampshire.

17.    Lunderville is a member, officer, director, and/or owner of White Mountains.

18.    Lunderville is a member, officer, director, and/or owner of Alexxon.

19.    Lunderville is a member, officer, director, and/or owner of Profile.

20.    Lunderville is a member, officer, director, and/or owner of RNEB.

21.    Lunderville is a member, officer, director, and/or owner of Radiotron.

**JURISDICTION AND VENUE**

22.    This is an action arising under the Copyright Act, 17 U.S.C. § 501.

23.    This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

24.    Defendants are subject to personal jurisdiction in New Hampshire because they reside and/or do business in the state.

4

25.     Venue is proper pursuant to 28 U.S.C. § 1400(a) because the Defendants reside and/or do business in this District.  Venue is also proper under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of New Hampshire and/or pursuant to § 1391(b)(2) to the extent that Defendants' infringing conduct occurred in this district.

## DEFENDANTS' OWNERSHIP AND OPERATION OF DEFENDANTS' RADIO STATIONS

26.     Defendants collectively own and operate Defendants' Radio Stations doing business as "Radio New England Broadcast Group."

27.     Defendants, jointly own and operate radio station WOXX-FM for commercial purposes.  WOXX-FM broadcasts over frequency 97.1 FM and serves the Colebrook, New Hampshire region.  It operates using a "classic rock and classic hits" music format (*e.g.*, playing "hit" popular and rock and roll music from prior decades).  In connection with the operation of WOXX-FM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

28.     Defendants jointly own and operate radio station WKDR-AM for commercial purposes.  WKDR-AM broadcasts over frequency 1490 AM and serves the Berlin, New Hampshire region.  WKDR-AM often broadcasts a "simulcast" of the music being performed on WOXX-FM.  In connection with the operation of WKDR-AM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

29.     Defendants jointly own and operate radio station WOTX-FM for commercial purposes. WOTX-FM broadcasts over frequency 93.7 FM and serves the Lunenberg, Vermont region.  It operates using a "classic rock and classic hits" music format (*e.g.*, playing "hit" popular

and rock and roll music from prior decades). In connection with the operation of WOTX-FM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

30. Defendants jointly own and operate radio station WLTN-AM for commercial purposes. WLTN-AM broadcasts over frequency 1400 AM and serves the Littleton, New Hampshire region. It operates using an "oldies" music format (*e.g.*, playing "hit" popular music from prior decades, and mostly from the 1950s and 1960s). In connection with the operation of WLTN-AM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

31. Defendants jointly own and operate radio station WXXS-FM for commercial purposes. WXXS-FM broadcasts over frequency 102.3 FM and serves the Lancaster, New Hampshire region. It operates using an "contemporary hit radio" music format (*e.g.*, playing current popular music hits). In connection with the operation of WXXS-FM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

32. Defendants jointly own and operate radio station WMOU-AM for commercial purposes. WMOU-AM broadcasts over frequency 1230 AM and serves the Berlin, New Hampshire region. WMOU-AM often broadcasts a "simulcast" of the music being performed on WXXS-FM. In connection with the operation of WMOU-AM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

33.    As the owners and operators of the Defendants Stations, Defendants have the right and ability to control the content that is broadcast on the stations, including the right and ability to control whether the stations broadcast public performances of copyrighted musical compositions.

34.    Defendants and Lunderville each derive a direct financial benefit from the public performance of musical compositions on the Defendants Stations through, among other things, selling advertising spots to local and national advertisers to be incorporated in radio broadcasts on those stations.

**ASCAP'S LICENSING OF THE RADIO INDUSTRY
AND THE DEFENDANTS RADIO STATIONS**

35.    Each of the Plaintiffs is now, and at the times of the alleged infringements was, a member of ASCAP. ASCAP's more than one million songwriter, composer and music publisher members are the creators and owners of the copyrights in more than 20 million musical works. Each ASCAP member grants to ASCAP a non-exclusive right to license the performing rights in that member's copyrighted musical compositions, including the right to perform those compositions publicly via radio broadcasting.

36.    For decades, ASCAP—on behalf of its members—has negotiated uniform license agreements with a committee comprised of broadcasters representing thousands of commercial radio stations.  The negotiated, industry-wide license agreement then becomes the *de facto* ASCAP license for the great majority of commercial radio stations for the duration of the term of the license agreement.

37.    The current industry-wide agreement for the commercial industry has been in effect since July 1, 2025 (the "2025 ASCAP Radio License Agreement").  Prior to that, for the period between January 1, 2022 and June 30, 2025 (the "Interim License Period"), radio stations had been

operating pursuant to an "interim license" arrangement with ASCAP.  During the Interim License Period, the terms of the prior industry-wide ASCAP license agreement, covering the term from January 1, 2017 through December 31, 2021 (the "2017 ASCAP Radio License Agreement"), were extended on an interim basis.

38.     Like the owners and operators of thousands of other commercial radio stations operating in the United States, Defendants were at one time licensed to perform ASCAP's members' music on the Defendants Radio Stations.

39.     However, by in or around early 2023, Defendants had become seriously delinquent in payment of the license fees owed to ASCAP under the 2017 ASCAP Radio License Agreement. As a result, ASCAP licensing and legal representatives contacted Defendants, including Brian Lunderville, personally, in efforts to address the past due balances owed to ASCAP by Defendants' Radio Stations.

40.     Throughout 2023 and 2024 ASCAP made repeated efforts to reach Lunderville to attempt to resolve the issue of Defendants' Radio Stations' substantial delinquencies.  ASCAP's communications to Lunderville, sent via Federal Express and email, explained to Defendants that their failure to pay ASCAP fees constituted a material breach of the terms and conditions of the ASCAP license's for Defendants' Radio Stations.  ASCAP also reminded Lunderville that the failure to pay ASCAP fees was causing direct harm to ASCAP's songwriter, composer, and music publisher members.

41.     Unfortunately, Lunderville largely ignored ASCAP's outreach, and Defendants never took the steps necessary to cure its material breaches and default.  As a result, ASCAP duly terminated Defendants' Radio Stations' ASCAP licenses, effective as of May 30, 2024 (the "Date of Termination").

42.     Even after the Date of Termination, ASCAP made additional attempts to resolve this matter without resort to litigation.  Unfortunately, Defendants ignored all such attempts and have made no effort to take the steps necessary to reinstate the Defendants' Radio Stations' ASCAP licenses.

43.     As a result, Defendants have been operating Defendants' Radio Stations without an ASCAP license since the Date of Termination.  Since that date, they have knowingly and willfully continued to broadcast public performances of ASCAP's members' music without permission and without compensating ASCAP's members for such performances.

**DEFENDANT'S INFRINGING
PERFORMANCES OF PLAINTIFFS' WORKS**

44.     Plaintiffs have obtained evidence that Defendants have routinely continued to broadcast public performances of ASCAP's members music on the Defendants' Radio Stations without authorization since the Date of Termination.  Plaintiffs' copyrighted musical works, listed on SCHEDULE A to the complaint, are just a representative sample of the dozens, if not hundreds, of songs in the ASCAP repertory that have been performed without authorization by Defendants, as evidenced by analysis of recordings ASCAP obtained from a third-party radio taping service.

45.     The original musical compositions listed in Column 3 of SCHEDULE A to the Complaint were performed without authorization on the dates and stations indicated in Column 9.

46.     The original musical compositions listed in Column 3 of SCHEDULE A were created and written by the individuals listed in corresponding Column 4.

47.     The original musical compositions listed in cause of action 1, 2, 5, 6, and 7 were published on the dates stated in Column 5, and since their respective dates of publication have been printed and published in strict conformity with Title 17 of the United States Code.

48.     The original musical compositions listed in cause of action 3 and 4 were registered as unpublished works on the dates stated in Column 5, and since their respective dates of registration have been printed and published in strict conformity with Title 17 of the United States Code.

49.     The Plaintiffs named in each of the seven (7) causes of action, as laid out in SCHEDULE A, including their predecessors in interest, if any, complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges in and to the copyright of each composition listed in Column 3, and received from the Register of Copyrights a Certificate of Registration, identified as set forth in Column 6.

50.     The original musical compositions named in causes of action 3 and 4 are now in their renewal term of copyright, secured by due filing of an application for renewal of copyright in the office of the Register of Copyrights. The Register of Copyrights thereupon issued Certificates of Registration of the respective claims to the renewal of copyrights in the names of those claimants listed in Column 7. The dates and identification numbers of such certificates are set forth in Column 8.

51.     At the times of the acts of infringement complained of, the Plaintiffs listed in Column 2 of SCHEDULE A owned—and continue to own—valid copyrights in the musical works listed in corresponding Column 3.

52.     The copyrighted works listed in Column 3 of SCHEDULE A are 100%-owned and/or controlled by ASCAP's members.  As a result, no other U.S.-based performing rights licensing organization has the right to license public performances of the listed works.

53.     At the time of the acts of infringement complained of, Defendants were aware that Defendants' Radio Stations were not licensed by ASCAP.

54.    At the time of the acts of infringement complained of, Defendants did not have permission from Plaintiffs—or anyone acting on Plaintiffs' behalf—to publicly perform Plaintiffs' musical compositions, whether by means of radio broadcast, or any other means.  Yet, Defendants did nothing to prevent the public performances of Plaintiffs' musical works on which this action is based.

55.    At all relevant times Defendants have had—and continue to have—the right and ability to supervise and control the activities undertaken in connection with the operation of Defendants' Radio Stations, including the right and ability to supervise and control the public performance of music by such stations.

56.    At all relevant times, Defendants have received—and continue to receive—a direct financial benefit from the public performance of music on the Defendants' Radio Stations.

WHEREFORE, Plaintiffs pray:

I.    That Defendants and all persons acting under the direction, control, permission or authority of Defendants be enjoined and restrained preliminarily and permanently from publicly performing and/or causing or permitting the public performance of Plaintiffs' copyright music, or any other musical compositions in the ASCAP repertory, by means of radio or digital broadcast over the Defendants Stations.

II.    That Defendants be decreed to pay such statutory damages for copyright infringement as to the Court shall appear just, as specified in 17 U.S.C. §§ 504(c)(1), namely, not more than Thirty Thousand Dollars ($30,000.00) nor less than Seven Hundred And Fifty Dollars ($750.00) for each of the seven (7) acts of infringement set forth herein.

III.    That Defendants alternatively be decreed to pay such statutory damages for willful copyright infringement as to the Court shall appear just, as specified in 17 U.S.C. §§ 504(c)(2),

namely, not more than One Hundred Fifty Thousand Dollars ($150,000.00) nor less than Seven Hundred And Fifty Dollars ($750.00) for each of the seven (7) acts of infringement set forth herein.

IV.    That Defendants be decreed to pay the costs of this action and that a reasonable attorneys' fee be allowed as part of the costs under 17 U.S.C. § 505.

V.    For such other and further relief as may be just and equitable.

Respectfully submitted,

CENTER CITY MUSIC, STYGIAN SONGS,
DOORS MUSIC CO., W CHAPPEL MUSIC
CORP. d/b/a WC MUSIC CORP., ALMOND
LEGG MUSIC CORP., GONE GATOR MUSIC
and MIKE CHAPMAN PUBLISHING
ENTERPRISES

By their attorneys,

**RANSMEIER & SPELLMAN P.C.**

Date:  June 8, 2026             By:＿＿ /s/ Biron L. Bedard ＿＿＿＿＿＿
                                     Biron L. Bedard (NHBA #8758)
                                     1 Capitol Street
                                     Concord, NH  03301
                                     (603) 410-6625
                                     *bbedard@ranspell.com*

4898-6712-1075, v. 1